Good morning. May it please the Court, my name is David Schlesinger. I represent the appellant Mary Gordon, successor in interest to Matthew Sean Gordon. Mrs. Gordon is actually present here today in the second row, joined by her son Robert and his wife Lisa. I'm joined at council table by Cameron Seahat, who's not only my co-counsel, but also the lead litigator for Mr. Gordon in the District Court. On September 8, 2013, at 6.47 p.m., Mr. Gordon was assessed by registered nurse Mary Finley in the Orange County Men's Central Jail. Registered nurse Finley used an incorrect form to assess Mr. Gordon, who had told registered nurse Finley that he was a 3 grams per day heroin user. Twenty-eight hours later, after having been inadequately monitored, not placed in the proper medical observation unit, he was placed instead in general population. And after suffering through excruciating physical pain and other disabilities because of his opiate withdrawal, Robert Denny, deputy who was conducting safety checks that evening, discovered Mr. Gordon in his upper bunk bed, which was contrary to registered nurse Finley's instructions that he be placed in a lower bunk bed. He discovered Mr. Gordon unresponsive, literally blue in the face, lying in a pool of sweat ten inches in diameter and completely unresponsive. Later that evening, approximately 11.30, Mr. Gordon was pronounced dead at Western Medical Center in Santa Ana. This case, this appeal, requires this court to determine as an issue of first impression whether the Supreme Court's opinion in Kingsley v. Hendrickson, which established an objective framework for assessing excessive force claims under the Due Process Clause, and this court's en banc opinion in Castro v. County of Los Angeles, which assessed a similar objective framework for failure to protect claims under the Due Process Clause. This court should, we believe, along with the recently decided Second Circuit opinion in Darnell v. Pinero, which extended that objective framework to all conditions of confinement claims under the Due Process Clause, we believe the court should extend that objective framework to Mr. Gordon's failure to provide proper medical care and monitor properly that medical care under the Due Process Clause. Now, there are several reasons why Castro and Kingsley should be extended to this court's, to this case's context. The foremost reason I would submit is that Castro involved a failure to protect context. And in this case, when you look at this case's specific factual circumstances, the individual defendants, particularly in Registered Nurse Finley and Deputy Robert Denny, failed to properly protect Mr. Gordon by giving him not only the medical care he needed, which was placement in the proper opioid withdrawal protocol, ensuring that that was applied to him, but also monitoring him. Now, remarkably, Mr. Deputy Denny, to his credit, conceded, admitted during his deposition, that he conducted two safety checks of Mr. Gordon's Module C, Tank 11, at 8.31 p.m. and 9.29 p.m. during the evening of September 9th. Mr. Denny, Deputy Denny, conceded that he was conducting those safety checks from a vantage point 12 to 15 feet away, outside a glass window, elevated six feet from the floor of what was called the tier area, the floor of the tank where Mr. Gordon was stationed, where he was laying in his bunk bed. Counsel, if we agree with you and extend Castro in these particular circumstances, shouldn't the case be remanded back for evaluation by the District Court, since that is not the standard that was used? Your Honor, yes, we agree that that would be an acceptable outcome if this Court were to remand for determination under Castro, both for the claims against the individual defendants and the Monell claim, because Castro had some significant legal developments in that area as well. But we would submit, Your Honor, that it would be even more desirable, given how long this case has been litigated, more than three years thus far, that it would be at least appropriate to instruct the District Court to reverse the summary judgment grant as to Deputy Denny and to Registered Nurse Finley, because even under the currently prevailing Clue Day standard from Clue Day v. County of Contra Costa, we submit that there were genuine issues of material fact regarding not only whether there was a substantial risk of serious harm to Mr. Gordon being placed in the incorrect protocol and being inadequately monitored, but also regarding whether Registered Nurse Finley and Deputy Denny were subjectively aware that Mr. Gordon could face a substantial risk of serious harm if he were not adequately monitored or placed in the correct protocol. And this is particular. Well, he indicated to Nurse Finley, I thought, the form indicated, that he was at a level 3 out of 10. That's not such a high level that would necessarily, on its face, seems to me, require that someone be placed in a different protocol. If he were actually an alcoholic, I would agree with you, Your Honor, but he was actually assessed with the CEWA form used for people with alcohol withdrawal instead of the CALS form, which is the appropriate form to be used for persons suffering from opiate withdrawal. So in that regard, the entire assessment process was flawed from the start because Nurse Finley wasn't even using the correct form, much less being prepared to place Mr. Gordon in the correct opiate withdrawal protocol. Did he tell Nurse Finley that he had been taking, was it heroin? He did, Your Honor. He informed her, and this is present in the record both in terms of Nurse Finley's deposition testimony and in the triage assessment form, in documentary form, that he was taking 3 grams of heroin per day. Was that disputed in the record at all? It was not disputed, Your Honor. And, indeed, I think the district court essentially adopted that as a finding of fact for purposes of the summary judgment motion that is contained in his written order. So, again, Judge Rogers, we would be willing to accept a remand for reconsideration of the summary judgment motion, both the individual claims and the Monell claims under Castro and Kingsley, but we do submit that there is very strong. I think if we remanded it, we would have to vacate the grant of summary judgment. You would, Your Honor. Because the judge would be then required to view the undisputed facts under this new standard, so that prior summary judgment couldn't stand. I think Your Honor is correct. And so procedurally speaking, if this court deems it appropriate only to vacate, rather to vacate and reverse, then that is a remedy that we would be prepared to accept. We're very confident that if this case is evaluated from an objective framework, then the summary judgment would not be appropriate for all the individual defendants, but particularly with regard to Deputy Denny and Nurse Finley. Did you appeal the grant of summary judgment as to all of the individuals or just two of them? We appealed with regard to all the individuals, Your Honor. And I think we've made clear in the opening brief that we think that the objective framework, at a bare minimum the objective framework set forth in Castro, should be applied to all the individual defendants. If this case were remanded. But with respect to the Minnell claims, that wasn't an objective framework applied in the first instance. We're not sure precisely what framework the district court applied, Your Honor, because he decided on very narrow grounds. He essentially determined that there were two reasons why he was granting summary judgment. The first is that he believed that to the extent we were alleging a violation of Title 15, Section 1027 of the California Code of Regulations, that that was not sufficient to state an 1883 Minnell claim. Now, as we explain in the brief, we're not making that specific contention. We're simply using the violation under these specific circumstances to show that a custom or a policy had been established that was a deviation from a written policy. In this case, not only Section 1027, but also a policy of Section 1716.2 of the Sheriff's Manual. So that was the first reason. The second reason he offered was that we had only articulated one violation of those policies, namely what happened in this case. As we discussed in our brief, Castro specifically mentioned in a footnote, citing to Brown v. County Commissioners in the 1897 Supreme Court case, that even one violation or one situation in which harm occurred as a result of a deviation from written policies, like longstanding customs or policies that were unconstitutional, would be sufficient to establish a Minnell claim. So that's why we think at a bare minimum, Your Honor, that remand would be appropriate so that the district court could assess the Minnell claims under Castro's language. But with respect to that last issue, in terms of the entity defendants, the Minnell claim, there certainly was evidence in the record of a routine practice of inadequate safety checks by checking from the corridor. That's correct, Your Honor. And that was the testimony of the officers themselves. But not with respect to the failure to use the COWS form. Isn't that right, that you didn't have evidence beyond the one instance? I would acknowledge, Your Honor, we didn't have that definitive concession or admission like we did from Deputy Denny. We do have evidence that the COWS policy changed in October of 2013 and that the jail then made it mandatory for there to be an assessment of individuals suffering from opiate withdrawal using the COWS form. So, you know, we would acknowledge that the quantum of evidence was stronger regarding. Now, is that evidence admissible? I know that in a regular tort action it wouldn't be remedial action after the fact, but with respect to a Minnell claim, is it admissible? The change of policy. Yeah, we acknowledge that federal rule of evidence that you're mentioning, Your Honor. At this point, we know that the district court did not reject that evidence on that basis. And, indeed, I believe, if I recall his memorandum of opinion correctly, I believe he did discuss it as following from the tragic incidents of this case. Now, whether it's ultimately admissible if this case goes to trial, I can't opine on that right now, though we would be prepared to submit supplemental briefing if the court deems it appropriate. I see that my time is rapidly diminishing, so if there are no further questions, I'd be glad to reserve my remaining time for rebuttal. All right. No questions here. No questions? Okay. Thank you. You may. Thank you. Good morning, Your Honors. May it please the Court. My name is Pansy Lin, and today I am here on behalf of the defendant's appellees in the underlying action, the County of Orange, as well as the individuals Robert Denny, Brian Tonke, Brianne Garcia, and Deborah Finley. This case comes to this Court on an appeal from a granting of motions for a summary judgment brought by the individuals as well as the entity defendants. The individual defendants raised the issue of qualified immunity, and it was under the two-step rubric that I'm sure this Court is well aware of, that the district court determined the individual defendants were entitled to the immunity because they were not deliberately indifferent to Mr. Gordon's medical needs. You would concede, if the standard is the new standard under Castro, that the fact that that finding was made is no longer an apt finding, though? Well, if the Court finds that the new standard under Castro is applicable, I would submit that the evidence is still clear that the individual defendants were also, did not recklessly disregard Mr. Gordon's medical needs, and the record is ample in terms of evidence of the treatment that Mr. Gordon in fact received. But don't you think that the district court would have to determine that in the first instance since if we were to rule that Castro and Kingsley apply to this type of claim, wouldn't the district court have to reassess the evidence before it? That may be true, Your Honor. I think that if this Court were to find that a new law applies in terms of the constitutional right here at issue, that's precisely what qualified immunity addresses in the second step. If there is new law that judges are trying to figure out and determine, and as Mr. Schlesinger said, a matter of first impression, individuals out in the jails shouldn't be deemed with being able to predict what new standard might apply. Well, the constitutional right hasn't changed. Correct, Your Honor, but the standard by which they would be gauged, you know, would be different. Right, but that's just a legal analysis. The constitutional right itself has existed for over three decades. Yes, Your Honor, and the constitutional right here, I would submit is the deliberate indifference to the medical treatment, whether Mr. Gordon received medical treatment. And even in Castro, this Court limited the application of the reckless disregard standard to the context of a pretrial detainee's failure to protect claim, which is not what we have here. It was not what was pleaded. So you're arguing we shouldn't extend Kingsley in Castro? Yes, Your Honor. I would submit that the extension should not be applied because Castro says in the opinion itself that it is for a pretrial detainee's failure to protect claim. We do not have that here. So it shouldn't change the legal landscape in terms of the deliberate indifference to medical needs claims. So I'm just curious. Go on. Go on. Go on, Judge Goldberg. Well, I have one question. That is, putting aside the legal question whether Kingsley or Castro require an objective standard and just looking at it in terms of the interests of the county itself, what I'd like to know is, is it your contention that the county of Orange is better off having a subjective standard for its employees there, or would it be better for all concerned to have an objective standard? I don't think that the issue should be framed as whether the county is better off under either standard because under either standard, under the facts of this case, the county and its employees provided the care and treatment that was required for Mr. Gordon. Now, you know, medicine is imperfect, and could that have ---- I think they believe they ---- I think Nurse Finley believed that she did, but, in fact, she didn't. It's almost like res ipsa loquitur. There is no evidence in the record and no evidence as part of the summary judgment motion that plaintiff presented that would indicate that Miss Finley's administration of the C.Y.O.A. over the cows somehow fell below the standard of care. And there is no evidence in the record that the administration of the one test over the other caused any substantial risk to Mr. Gordon. He was evaluated, his vitals were taken, and he was given appropriate medications that the jail had available to it for purposes of treating heroin withdrawal. So I'm curious about one thing. This decision was rendered June 14, 2016, and Kingsley was at 2015 and Castro was at 2016. I'm just wondering whether Kingsley and Castro were briefed to Judge Carney or not. Kingsley and Castro were not briefed to Judge Carney at the time. Castro came down about a month, maybe two, after the court had the MSJ in front of it. So Castro was not briefed. At the time, the standard was the Clothier case, which applied the subjective test, and that case, Clothier relates back all the way to Farmer v. Brennan and authority prior to it, where the deliberate indifference to medical care cases, the long line of cases in the Ninth Circuit that deemed things, acts like negligence, medical malpractice, those types of claims were legally inadequate to prove or to demonstrate deliberate indifference upon the individual defendant's actions. With regard to the Minnell claim, the district court, I think, got it right. If I understand Mr. Schlesinger's argument with regard to the Minnell claim, he repeatedly points to alleged violations that occurred under the facts of this case. And even if we were taking that to be true, Minnell and its progeny, the law is clear that in order to have an entity responsible for a constitutional violation, there must be a custom or a pattern or a practice. That is the theory that Ms. Gordon pursued in her underlying lawsuit, and that is the theory that the district court ruled on when it determined that there was simply inadequate evidence of repeated constitutional violations. Even if we take as true that multiple inadequate safety checks were done in this case, which I'm not conceding, but, you know, for purposes of the summary judgment standard, that in and of itself is not a proven pattern of a constitutional violation sufficient to hold the entity liable. The case, the one instance case that Mr. Schlesinger refers to, cited in a footnote in Castro, was the Brown case, and in that case, the court citing to, I think, the city of Canton case, was a failure to train case. And it was one in, and they hypothesized that there could be the possibility of one instance being the basis of a Monell claim if the consequences of a failure to train were so obvious in that one instance that repeated constitutional violations would be predictable. That is not the issue in this case. That is not the factual circumstances in this case. The facts in this case do not, again, Ms. Gordon did not pursue her failure to train theory, so that is, you know, one reason why that one instance Monell theory does not work here. And even if we had a failure to train theory, the consequences of using one evaluation over the other would not be obvious enough that it would be predictable that the use of the CEWA over the cows would result in constitutional violations repeatedly. But what about the fact that the jail changed its policy after this event occurred? That evidence is not admissible to prove repeated constitutional violations, which is what we have to have in order to have a Monell claim. And even if the checks and the use of the CEWA over the cows was inadequate, there still needs to be a next step, and the plaintiff and the appellant has to demonstrate that that caused a constitutional violation. That evidence was also lacking in the record. So, you know... Doesn't that at least create a genuine issue, I mean, a genuine dispute of material fact? I don't believe so, Your Honor, because ultimately there still is not a repeated pattern of constitutional violations sufficient to satisfy a Monell claim under the custom and practice theory that was pursued. Unless the Court has any questions, I would submit. All right, thank you. Thank you, Your Honor. Judge Gold? No. Thank you. To follow up first on an inquiry that Judge Wardlaw had initiated regarding the chronology of the jurisprudence, we do acknowledge that Kingsley and Castro predated this in the District Court's summary judgment order. At least, well, Kingsley predated. Castro followed two months after. You know, there's long been a principle of this Court, whether it's in a civil case, a criminal case, even with regard to the exhaustion doctrine in immigration appeals, that if a party, a litigating party, raises a general claim, that is sufficient to preserve the issue for appeal. On appeal, the party is then welcome to make additional arguments based on that general claim. So that's what we're doing here. We made a general claim. The inquiry was designed to find out whether Judge Carney had the benefit of Kingsley and Castro, not determining whether you waived an argument. No, I understand, Your Honor. He certainly had the benefit of Kingsley, not Castro. So that would be a basis, as both you and Judge Rogers have suggested, there would be a basis for remand for redetermination of the summary judgment. Counsel? Sure, Your Honor. I thought that your friend on the other side suggested that although Kingsley was decided before the date of the ruling, the briefing may have been written and submitted to the Court before Kingsley was decided. I believe, Your Honor, that the summary judgment motion briefing was finished in May of 2016 and Kingsley was a 2015 decision. Let's see, I have it here. Kingsley was decided on June 22, 2015, so approximately a full year before the summary judgment motion briefing had been completed in the district court. And was Kingsley cited in that briefing? Kingsley, as I recall, was not specifically cited by either of the parties in that briefing. As I had mentioned earlier, though, I don't think that's an impediment to Castro or Kingsley being applied retrospectively. No, I agree with that. Okay, thanks. Thank you, Your Honor. If there are no further questions, I'd be glad to submit. All right. Gordon v. Orange County is submitted.
judges: Wardlaw, Gould, Rogers